## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| CURTIS NANCE, and CLARA NANCE,  ) | |
| ) | |
| **Plaintiffs,**  ) | |
| ) | |
| vs.  ) | **Civil Action No. CV-10-S-3164-NE** |
| ) | |
| PAUL BRACY, JR.; INTERNAL REVENUE SERVICE; and ALABAMA DEPARTMENT OF REVENUE,  ) | |
| ) | |
| **Defendants.**  ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Curtis and Clara Nance, as purchasers of real property, commenced this action in the Circuit Court of Madison County, Alabama, to quiet title under Alabama Code § 6-6-540 (1975) against defendants Paul Bracy Jr., the seller of the properties, and the Internal Revenue Service ("IRS") and the Alabama Department of Revenue, lienors on the properties.[1]  The action was removed to this court by the IRS on November 19, 2010, pursuant to 28 U.S.C. §§ 1441, 1442(a)(1), and 1444.[2]  Bracy never filed an answer to plaintiffs' complaint, and plaintiffs moved for the entry of default against Bracy on May 3, 2011.[3]  The Clerk entered default against Bracy on

---

[1] *See* doc. no. 1-1 (Exhibits to Notice of Removal), at 3-7 (Complaint).
[2] *See* doc. no. 1 (Notice of Removal), at 1.
[3] *See* doc. no. 7 (Motion for Entry of Default).

the record of the case on May 9, 2011.[4]

The action presently is before the court on cross motions for summary judgment:  the first filed by plaintiffs, and the second by the IRS.[5]  The parties agree upon the material facts, and the only disputed issue is whether plaintiffs' interest in the subject properties has priority over federal tax liens on the properties.  Upon consideration of the motions, briefs, and evidentiary submissions, the court concludes that plaintiffs' motion is due to be granted, and the motion by the IRS is due to be denied.

## I.  LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).[6]  In other words, summary judgment is proper "after adequate time for discovery and upon

---

[4] Doc. no. 11 (Clerk's Entry of Default); doc. no. 12 (Clerk's Amended Entry of Default).

[5] Doc. no. 15 (Motion for Summary Judgment by the United States); doc. no. 16 (Plaintiffs' Motion for Summary Judgment).

[6] Rule 56 was amended, effective December 1, 2010, in conjunction with a general overhaul of the Federal Rules of Civil Procedure.  The Advisory Committee was careful to note, however, that the changes "will not affect continuing development of the decisional law construing and applying these phrases."  Adv. Comm. Notes to Fed. R. Civ. P. 56 (2010 Amends.) (emphasis supplied).  Consequently, cases interpreting the previous version of Rule 56 are equally applicable to the revised version.

motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact 'exists only if sufficient evidence is presented favoring the nonmoving party for a jury to return a verdict for that party.'" *Farley v. Nationwide Mutual Insurance Co.*, 197 F.3d 1322, 1336 (11th Cir. 1999) (quoting *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1284-85 (11th Cir. 1997)).

In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)). "[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence, but is pure conjecture and speculation." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1983). Moreover,

> [t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

3

*Chapman*, 229 F.3d at 1023 (quoting *Haves*, 52 F.3d at 921); s*ee also Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 251-52 (1986) (asking "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").

When presented with cross motions for summary judgment, "[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." 10A Wright, Miller & Kane, *Federal Practice and Procedure:  Civil 3d* § 2720, at 335-36 (1998) (footnote omitted).  As another court within this Circuit has observed:

> "Cross motions for summary judgment do not change the standard." *Latin Am. Music Co. v. Archdiocese of San Juan of the Roman Catholic & Apostolic Church*, 499 F.3d 32, 38 (1st Cir. 2007). "'Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.'" *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007) (quoting *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979)). "Even where the parties file cross motions pursuant to Rule 56, summary judgment is inappropriate if disputes remain as to material facts." *Id.*; *accord Monumental Paving & Excavating, Inc. v. Pa. Mfrs.' Ass'n Ins. Co.*, 176 F.3d 794, 797 (4th Cir. 1999) ("When considering motions from both parties for summary judgment, the court applies the same standard of review and so may not resolve genuine issues of material fact.  Instead, [the court must] consider and rule upon each party's motion separately and determine whether summary judgment is appropriate as to each under the Rule 56 standard.") (citations omitted).

*Ernie Haire Ford, Inc. v. Universal Underwriters Insurance Co.*, 541 F. Supp. 2d

1295, 1297-98 (M.D. Fla. 2008).  *See also American Bankers Ins. Group v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005) ("This court reviews the district court's disposition of cross-motions for summary judgment de novo, applying the same legal standards used by the district court, viewing the evidence and all factual inferences therefrom in the light most favorable to the non-movant, and resolving all reasonable doubts about the facts in favor of the non-moving party.").

## II.  SUMMARY OF THE RELEVANT FACTS

Neither plaintiffs nor the IRS dispute the statements of undisputed material facts contained in the opposing party's brief.[7] Thus, the following statement of facts is a combination of the undisputed facts set forth in the parties' briefs.

### A.    Bracy's Tax Liabilities

From 1998 through 2007, a delegate of the Secretary of the Treasury assessed unpaid taxes, penalties, and interest against Paul Bracy, Jr., and several business entities owned by Bracy:  Bracy's Vending, Inc.; PBS Blues Bar, Inc.; and Green Room Lounge, Inc.[8] Despite receiving notice and demand for payment, Bracy and his

---

[7] Doc. no. 19 (Response of the United States in Opposition to Plaintiffs' Motion for Summary Judgment), at 2 ("The United States does not dispute any of the material facts outlined in Plaintiffs' Statement of Undisputed Facts."); doc. no. 24 (Plaintiffs' Response in Opposition to the Motion for Summary Judgment Filed by the United States), at 2 ("Plaintiffs do not dispute any of the material facts stated in the United States' Statement of Undisputed Facts included in the United States' Motion for Summary Judgment.").

[8] Doc. no. 15 (Motion for Summary Judgment by the United States), at 7; *see also* doc. no. 15-5 (Affidavit of Vickie Salter), at 2; doc. no. 15-6 (Records of Bracy's Tax Liabilities); doc. no.

businesses did not pay the tax liabilities underlying those assessments.[9]  The following four tables display the taxes assessed against Bracy and the entities, the dates on which the assessments were made, and the tax periods for which the taxes were assessed.[10]

### Taxes Assessed Against Paul Bracy, Jr.

| Tax Assessed | Assessment Date | Tax Period |
| --- | --- | --- |
| $3,265.34 | 5/14/2007 | 12/31/2001 |
| $3,663.34 | 5/14/2007 | 3/31/2002 |
| $4,072.73 | 5/14/2007 | 9/30/2002 |
| $3,776.42 | 5/14/2007 | 12/31/2002 |
| $3,545.76 | 5/14/2007 | 9/30/2003 |
| $2,408.73 | 5/14/2007 | 12/31/2003 |
| $4,396.40 | 5/14/2007 | 3/31/2004 |
| $4,431.30 | 5/14/2007 | 6/30/2004 |
| $5,548.38 | 5/14/2007 | 9/30/2004 |
| $7,247.64 | 5/14/2007 | 12/31/2004 |
| $5,097.98 | 10/15/2007 | 3/31/2005 |
| $7,543.09 | 10/15/2007 | 9/30/2005 |

---

15-7 (Records of the Tax Liabilities of Green Room Lounge, Inc.); doc. no. 15-8 (Records of the Tax Liabilities of PBS Blues Bar, Inc.); doc. no. 15-9 (Volume 1, Records of the Tax Liabilities of Bracy's Vending, Inc.); doc. no. 15-10 (Volume 2, Records of the Tax Liabilities of Bracy's Vending, Inc.); doc. no. 15-11 (Volume 3, Records of the Tax Liabilities of Bracy's Vending, Inc.).

[9] Motion for Summary Judgment by the United States, at 7.

[10] Doc. no. 15-12 (Table of Assessments).  Note that the tables only reflect the taxes assessed on each assessment date, and do not reflect the assessment of penalties (other than 26 U.S.C. § 6672 penalties assessed against Bracy) or interest.

| Tax Assessed | Assessment Date | Tax Period |
|---|---|---|
| $5,952.93 | 10/15/2007 | 12/31/2005 |
| $5,149.52 | 10/15/2007 | 3/31/2006 |
| $7,647.81 | 10/15/2007 | 6/30/2006 |
| $985.35 | 10/29/2007 | 6/30/1998 |
| $1,042.41 | 10/29/2007 | 9/30/1998 |
| $738.60 | 10/29/2007 | 12/31/1998 |
| $783.63 | 10/29/2007 | 3/31/1999 |
| $783.63 | 10/29/2007 | 6/30/1999 |
| Total Taxes Assessed:  $78,080.99 | | |

## Taxes Assessed Against Bracy's Vending, Inc.

| Tax Assessed | Assessment Date | Tax Period |
|---|---|---|
| $2,919.93 | 9/7/1998 | 6/30/1998 |
| $1,982.64 | 12/7/1998 | 9/30/1998 |
| $3,113.90 | 3/29/1999 | 12/31/1998 |
| $3,280.70 | 6/21/1999 | 3/31/1999 |
| $3,615.04 | 6/14/2004 | 3/31/2000 |
| $4,622.35 | 6/14/2004 | 6/30/2000 |
| $5,392.74 | 6/14/2004 | 9/30/2000 |
| $279.99 | 6/14/2004 | 12/31/2000 |
| $4,622.35 | 6/14/2004 | 12/31/2000 |
| $5,396.89 | 6/14/2004 | 3/31/2001 |
| $4,586.34 | 6/14/2004 | 6/30/2001 |
| $5,350.74 | 6/14/2004 | 9/30/2001 |

| Tax Assessed | Assessment Date | Tax Period |
|---|---|---|
| $289.79 | 6/14/2004 | 12/31/2001 |
| $4,815.64 | 6/14/2004 | 12/31/2001 |
| $5,486.84 | 6/14/2004 | 3/31/2002 |
| $5,226.00 | 6/14/2004 | 6/30/2002 |
| $361.57 | 6/14/2004 | 12/31/2002 |
| $5,753.84 | 6/14/2004 | 12/31/2002 |
| $5,457.21 | 6/14/2004 | 3/31/2003 |
| $5,258.16 | 6/14/2004 | 6/30/2003 |
| $5,772.52 | 6/14/2004 | 9/30/2003 |
| $413.60 | 6/14/2004 | 12/31/2003 |
| $4,001.46 | 6/14/2004 | 12/31/2003 |
| $6,116.46 | 6/21/2004 | 9/30/2002 |
| $2,063.61 | 3/21/2005 | 12/31/1998 |
| $3,246.73 | 3/21/2005 | 9/30/1999 |
| $2,163.80 | 3/21/2005 | 12/31/1999 |
| $3,246.72 | 3/21/2005 | 12/31/1999 |
| $3,246.73 | 3/28/2005 | 6/30/1999 |
| $7,462.00 | 4/11/2005 | 3/31/2004 |
| $7,047.60 | 4/11/2005 | 6/30/2004 |
| $8,818.75 | 4/11/2005 | 9/30/2004 |
| $11,207.28 | 4/11/2005 | 12/31/2004 |
| $77,455.00 | 12/4/2006 | 12/31/1998 |
| $93,381.00 | 12/4/2006 | 12/31/1999 |
| $196,698.00 | 12/4/2006 | 12/31/2000 |
| $141,889.00 | 12/4/2006 | 12/31/2001 |

| Tax Assessed | Assessment Date | Tax Period |
|---|---|---|
| $196,187.00 | 12/4/2006 | 12/31/2002 |
| $234,655.00 | 12/11/2006 | 12/31/2003 |
| Total Taxes Assessed:  $1,082,884.92 | | |

## Taxes Assessed Against PBS Blues Bar, Inc.

| Tax Assessed | Assessment Date | Tax Period |
|---|---|---|
| $1,373.21 | 12/26/2005 | 12/31/2004 |
| $1,373.21 | 6/26/2006 | 3/31/2003 |
| $1,373.21 | 6/26/2006 | 9/30/2003 |
| $1,373.21 | 6/26/2006 | 12/31/2003 |
| $1,377.25 | 9/11/2006 | 12/31/1998 |
| $1,082.25 | 9/11/2006 | 3/31/1999 |
| $1,082.25 | 9/11/2006 | 6/30/1999 |
| $1,082.25 | 9/11/2006 | 9/30/1999 |
| $1,165.50 | 9/11/2006 | 12/31/1999 |
| $1,082.70 | 9/11/2006 | 3/31/2000 |
| $1,082.70 | 9/11/2006 | 6/30/2000 |
| $1,082.70 | 9/11/2006 | 9/30/2000 |
| $1,082.70 | 9/11/2006 | 12/31/2000 |
| $1,081.70 | 9/11/2006 | 3/31/2001 |
| $1,081.70 | 9/11/2006 | 6/30/2001 |
| $1,081.70 | 9/11/2006 | 9/30/2001 |
| $875.81 | 9/11/2006 | 12/31/2001 |
| $1,081.70 | 9/11/2006 | 3/30/2002 |

| Tax Assessed | Assessment Date | Tax Period |
|---|---|---|
| $1,787.40 | 9/11/2006 | 12/31/2002 |
| $1,373.21 | 9/11/2006 | 3/31/2004 |
| $1,373.21 | 9/11/2006 | 6/30/2004 |
| $1,509.82 | 9/18/2006 | 9/30/1998 |
| $56.00 | 9/18/2006 | 12/31/1999 |
| $56.00 | 9/18/2006 | 12/31/2000 |
| $56.00 | 9/18/2006 | 12/31/2001 |
| $86.93 | 9/18/2006 | 12/31/2002 |
| $1,452.70 | 10/16/2006 | 6/30/1998 |
| $1,081.70 | 12/18/2006 | 9/30/2002 |
| $72,212.00 | 2/26/2007 | 12/31/2004 |
| $45,186.00 | 3/19/2007 | 12/31/2003 |
| Total Taxes Assessed:  $147,046.72 | | |

## Taxes Assessed Against Green Room Lounge, Inc.

| Tax Assessed | Assessment Date | Tax Period |
|---|---|---|
| $12,909.17 | 1/9/2006 | 9/30/2005 |
| $10,598.18 | 7/3/2006 | 3/31/2006 |
| $41,363.00 | 12/4/2006 | 12/31/2001 |
| $80,923.00 | 12/4/2006 | 12/31/2002 |
| $141,858.00 | 12/11/2006 | 13/31/2004 |
| $92,782.00 | 12/11/2006 | 12/31/2003 |
| $8,880.96 | 12/11/2006 | 3/31/2005 |
| $10,125.85 | 12/11/2006 | 12/31/2005 |

| Tax Assessed | Assessment Date | Tax Period |
|---|---|---|
| $12,973.63 | 12/18/2006 | 6/30/2006 |
| $2,872.63 | 12/18/2006 | 12/31/2005 |
| Total Taxes Assessed:  $415,286.42 | | |

## B.    The Contract

Plaintiffs, Curtis and Clara Nance, who are husband and wife, entered into an installment land sales contract — *i.e.*, an executory contract[11] — with Bracy on May 11, 2007.[12]  Plaintiffs were not aware of Bracy's tax liabilities on the date they executed the contract, and they would not have executed the contract had they known about those liabilities.[13]  Pursuant to the contract, plaintiffs agreed to purchase from Bracy three parcels of real property located at the following addresses in Huntsville, Madison County, Alabama:  614 Murray Road, 2304 Bell Avenue, and 2709 Barbara

---

[11] An "executory contract" is a "contract that has not yet been fully completed or performed. A contract the obligation (performance) of which relates to the future." *Black's Law Dictionary* 570 (6th ed. 1991). Also, an "executory contract to sell" is a "[c]ontract under which something remains to be done by either party before delivery and passing of title." *Id.* (alteration supplied).  An installment land sale contract is an executory contract for the sale of real property. *Black's Law Dictionary* defines an "installment land contract" as a "[t]ype of contract by which buyer is required to make periodic payments towards [the] purchase price of land and only on the last payment is the seller required to deliver a deed." *Id.* at 799 (alterations supplied).

[12] *See* doc. no. 15 (Motion for Summary Judgment by the United States), at 5; doc. no. 16-1 (Brief in Support of Plaintiffs' Motion for Summary Judgment), at 1; doc. no. 15-1 (Installment Land Sales Contract).  The contract states:  "This Contract entered at Huntsville, Alabama, this the **15th** day of May, 2007," but the notary signature blocks are dated May 11, 2007. *Id.* at 9 (bold emphasis in original).

[13] Doc. no. 16-1 (Brief in Support of Plaintiffs' Motion for Summary Judgment), at 5; doc. no. 16-2 (Affidavit of Clara Nance), at 4 ("At the time we decided to purchase the Property, we did not know Bracy had outstanding tax liabilities.  Had we known, we would not have purchased the Property.").

11

Drive.[14]  Plaintiffs agreed to pay a purchase price of $84,885.48 for the properties, an

amount that consisted of a down payment to Bracy of $15,000, and the assumption of

a mortgage on the properties held by Wachovia Bank with a remaining balance of

$69,885.48.[15]  Plaintiffs were contractually obligated to make the monthly mortgage

payments of $637.35 until the mortgage was paid in full.[16]  The contract further

provided:

> When the purchase price and all other amounts to be paid by the
> Buyers pursuant to this Contract are fully paid as provided for in this
> Contract, the Sellers [*sic*] will execute and deliver to the Buyers a
> good and sufficient warranty deed conveying to the Buyers good and
> marketable title to said property as evidenced by a title insurance policy
> in the full amount of the purchase price procured and paid for by the

---

[14] *See* Motion for Summary Judgment by the United States, at 5; Brief in Support of Plaintiffs' Motion for Summary Judgment, at 1-2; Installment Land Sales Contract, at 1.  A legal description of the properties was appended to the contract, and reads as follows:

> Lot 36, Block A, according the map of survey of Terry Heights, Third Addition, Huntsville, Alabama, as recorded in Plat Book 1, Page 177, in the Probate Office of Madison County, Alabama.

> Lot No. Three (3), in Block No. Three (3), of Gurley's Addition to the City of Huntsville, Alabama, according to plat of said Addition of record in the Probate Office of Madison County, Alabama in Plat Book 1, Page 193.

> Lot 4, in Block 4, according to the plat of Yarbrough Estates, Second Addition, as the same appears on record in the Office of the Judge of Probate of Madison County, Alabama, in Plat Book 2, on Page 84.

Installment Land Sales Contract, at 10.

[15] *See* Motion for Summary Judgment by the United States, at 6; Brief in Support of Plaintiffs' Motion for Summary Judgment, at 2; Installment Land Sales Contract, at 1.

[16] *See* Motion for Summary Judgment by the United States, at 6; Brief in Support of Plaintiffs' Motion for Summary Judgment, at 2; Installment Land Sales Contract, at 1.

Buyers.[17]

Additionally, Bracy agreed to refrain from taking any action to increase the balance of the mortgage lien on the properties, or further encumber the properties.[18] Bracy also executed a "seller's affidavit and indemnity agreement," in which he represented that "there are no liens or encumbrances against the property except for the lien for *ad valorem* taxes for the current year and the mortgage(s) described below . . ."[19]  Prior to the closing, the closing attorney performed a title search, and found that, other than the liens for *ad valorem* taxes and the mortgage to Wachovia Bank, there were no outstanding liens on the properties.[20]  The contract was recorded in the Probate Records of Madison County, Alabama, on May 15, 2007.[21]  At the time the contract was recorded, there were no recorded, outstanding liens against the properties other than those disclosed by Bracy.[22]

## C.    Quitclaim Deed

---

[17] Installment Land Sales Contract, at 1; *see also* Motion for Summary Judgment by the United States, at 6.

[18] *See* Installment Land Sales Contract, at 1-2; *see also* Brief in Support of Plaintiffs' Motion for Summary Judgment, at 2.

[19] Doc. no. 24-2 (Seller's Affidavit and Indemnity Agreement), at 1.

[20] Brief in Support of Plaintiffs' Motion for Summary Judgment, at 2.

[21] *See id.* at 3; Installment Land Sales Contract, at 1 (stamped in the upper right corner with: "Madison Cnty Judge of Probate, AL 05/15/2007 09:30:00 A.M. FILED/CERT"); Motion for Summary Judgment by the United States, at 6.

[22] Brief in Support of Plaintiffs' Motion for Summary Judgment, at 3.

The same day Bracy and plaintiffs entered into the contract, Bracy executed a quitclaim deed, releasing all of his "rights, title, interests and claims" in the properties to plaintiffs.[23]  It is unclear from the record whether Bracy delivered the quitclaim deed to plaintiffs on the day they entered into the contract, or on a later date.  Plaintiffs recorded the quitclaim deed on October 13, 2010.[24]

## D.    Satisfaction of Mortgage

Plaintiffs made consistent monthly mortgage payments to Wachovia as required by the contract from May 2007 until August 2008.[25]  Plaintiffs paid $63,734.66 to Wachovia on September 19, 2008, paying off the mortgage in full.[26]  A certificate of satisfaction was recorded in the office of the Madison County Probate Judge on October 27, 2008.[27]

## E.    The Federal Tax Liens

The United States filed "Notices of Federal Tax Liens" against Bracy for the

---

[23] Doc. no. 15-4 (Quitclaim Deed), at 1; *see also* Motion for Summary Judgment by the United States, at 9; Brief in Support of Plaintiffs' Motion for Summary Judgment, at 3.

[24] *See* Motion for Summary Judgment by the United States, at 10; Brief in Support of Plaintiffs' Motion for Summary Judgment, at 5.

[25] Brief in Support of Plaintiffs' Motion for Summary Judgment, at 3.

[26] *See id.* at 3; Motion for Summary Judgment by the United States, at 9; doc. no. 15-2 (Certificate of Satisfaction/Discharge of Mortgage).

[27] *See* Motion for Summary Judgment by the United States, at 9; Brief in Support of Plaintiffs' Motion for Summary Judgment, at 3; Certificate of Satisfaction/Discharge of Mortgage, at 1 (stamped in the upper right corner with "Madison Cnty Judge of Probate, AL 10/27/2008 12:57:32PM FILED/CERT").

tax liabilities assessed against him individually, and for the liabilities assessed against his companies.[28]  The liens against him for the tax liabilities of his companies were alter-ego liens that the IRS filed because it determined that the companies were alter-egos of Bracy due to his use of funds from those companies to pay his personal expenses.[29]

The following "Notices of Federal Tax Liens" were filed in the office of the Madison County Probate Judge:[30]

| Date Filed | Amount of Lien | Madison County Probate Instrument Number |
| --- | --- | --- |
| 7/20/2007 | $31,011.00 | 20070720090514848 |
| 7/20/2007 | $49,354.96 | 20070720090514850 |
| 12/5/2007 | $1,613,825.12 | 20071205000851970 |
| 12/5/2007 | $38,344.47 | 20071205000851980 |
| 12/5/2007 | $126,193.22 | 20071205000851960 |
| 12/5/2007 | $194,164.71 | 20071205000851990 |
| 12/5/2007 | $586,961.05 | 20071205000852010 |
| 12/5/2007 | $38,097.53 | 20071205000852000 |
| 12/17/2007 | $22,324.18 | 20071217000876120 |
| 12/17/2007 | $1,613,825.12 | 20071217000876130[31] |

---

[28] Motion for Summary Judgment by the United States, at 7.

[29] *Id.* at 7 n.1; doc. no. 15-5 (Affidavit of Vickie Salter), at 3.

[30] *See* Affidavit of Vickie Salter, at 3-4; doc. no. 15-13 (Notices of Federal Tax Liens); Motion for Summary Judgment by the United States, at 8.

[31] Instrument number 20071217000876130 covers the same tax period as instrument number 20071205000851970. *See* Affidavit of Vickie Salter, at 4; Notices of Federal Tax Liens, at 11-12.

| Date Filed | Amount of Lien | Madison County Probate Instrument Number |
|---|---|---|
| 12/17/2007 | $126,193.22 | 200712117000876140[32] |
| 12/17/2007 | $70,143.26 | 20071217000876170 |
| 12/26/2007 | $31,391.33 | 20071226000890240 |
| 1/16/2008 | $4,333.62 | 20080116000030690 |

In total, and excluding those liens that cover duplicate tax periods, the IRS filed "Notices of Federal Tax Liens" against Bracy in the amount of $2,806,144.45.[33]  The IRS did not search the records of the office of the Madison County Probate Judge prior to filing the "Notices of Federal Tax Liens."[34]  The IRS presently is not engaging in any efforts against Bracy to collect the federal taxes he owes, other than the federal tax liens attached to the properties.[35]

## F.    The State Tax Liens

The State of Alabama, through the Alabama Department of Revenue, filed the

---

[32] Instrument number 200712117000876140 covers the same tax period as instrument number 20071205000851960.  *See* Affidavit of Vickie Salter, at 4; Notices of Federal Tax Liens, at 9, 14.

[33] Doc. no. 15 (Motion for Summary Judgment by the United States), at 8.

[34] *See* Brief in Support of Plaintiffs' Motion for Summary Judgment, at 4; doc. no. 16-5 (Response of the United States to Plaintiffs' First Set of Interrogatories), at 3 ("The IRS did not conduct a search of the records of the Madison County Office of Probate in the weeks prior to the filing of the Notices of Federal Tax Liens against Bracy.").

[35] *See* doc. no. 16-1 (Brief in Support of Plaintiffs' Motion for Summary Judgment), at 5; Response of the United States to Plaintiffs' First Set of Interrogatories, at 3 ("Presently there are no ongoing collection efforts against Bracy other than the federal tax liens attached to Bracy's property.").

following "Notices of Liens for Taxes" in the office of the Madison County Probate Judge:[36]

| Date Filed | Amount of Lien | Madison County Probate Instrument Number |
|---|---|---|
| 11/5/2007 | $219,462.19 | 20071105000775350 |
| 2/26/2008 | $38,026.73 | 20080226000121430 |
| 2/26/2008 | $207,676.27 | 20080226000121470 |

The State's tax liens total $465,165.19.

## III.  DISCUSSION

As an initial matter, in response to the motions for summary judgment filed by plaintiffs and the IRS, the Alabama Department of Revenue filed a response stating that it "agrees that this matter is ripe for legal determination," and that "[t]he liens of the Alabama Department of Revenue do not have priority to the liens of the IRS[,] at least as to the value of the property the subject of this action."[37]  The response concludes by stating that "the Alabama Department of Revenue asserts no claim to the property in this case.  Summary Judgment of both the Plaintiffs and the IRS is due to be granted against the Alabama Department of Revenue."[38]

---

[36] *See* doc. no. 16-4 (Alabama Notices of Liens for Taxes), at 1-3; Brief in Support of Plaintiffs' Motion for Summary Judgment, at 3-4.

[37] Doc. no. 17 (Response to Motions for Summary Judgment by Alabama Department of Tax Revenue), at 1-2 (alteration supplied).

[38] *Id.* at 2.

17

Thus, because the State of Alabama has disclaimed any interest in the properties and an entry of default has been made against Bracy, the sole issue before the court is whether plaintiffs or the IRS have a superior interest in the properties. Resolution of that dispute requires the court to first determine the parties' respective interests in the properties, and then determine which of those interests has priority. *See Tompkins*, 946 F.2d at 819 ("Before we can evaluate the priority of the liens, we must first determine [the plaintiff's] property rights.").

State law determines what interest plaintiffs have in the properties, and federal law governs the priority of the federal tax liens in relation to plaintiffs' interest. *See Aquilino v. United States*, 363 U.S. 509, 512-14 (1960).

## A. Property Interests

Federal tax liens are created by the refusal of a person liable for a tax to pay the tax owed. Specifically, 26 U.S.C. § 6321 provides:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to each such person.

Turning now to the interests in the subject properties created by the contract between plaintiffs and Bracy, the interests in real property created by an executory

contract for the sale of that property are well-settled under Alabama law.  The vendor (seller) retains a "vendor's lien on the premises."  *Stagg v. Van Sant*, 390 So. 2d 620, 621 (Ala. 1980).  The lien retained by the vendor of real property under an executory contract is only a "so-called" lien, however, and "consists of [the vendor's] retention of title as security for the performance of the contract by the vendee."  *Wingard v. Randall*, 113 So. 2d 674, 678 (Ala. 1959); *see also, e.g.*, *Stagg*, 390 So. 2d at 622; *Rogers v. Gonzalez*, 40 So. 2d 858, 860 (Ala. 1949); *Qualls v. Union Central Life Insurance Co.*, 7 So. 2d 558, 559 (Ala. 1942); *Mid-State Homes, Inc. v. Brown*, 256 So. 2d 894, 897 (Ala. Civ. App. 1972).[39]

The vendee (purchaser) under an executory contract for the sale and purchase of real property holds an equitable interest in the property.  *Wingard*, 113 So. 2d at 678 ("Our cases are to the effect that a vendor who retains title under an executory

---

[39] Note that the vendor's lien created by an executory contract for the sale of real property is only one of the three forms of vendor's liens under Alabama law.  The Alabama Supreme Court described the three forms of vendor's liens in *Wingard* as follows:

> Vendor's liens, so called, upon real property are of three kinds; namely, (1) the lien imposed by law in favor of a vendor who has conveyed without taking any security for the payment of purchase money; this lien may well be described as a grantor's implied lien; (2) the lien which, upon conveyance of realty a vendor may secure by express contract; this lien may be described as a grantor's lien by express reservations; (3) the so-called lien which a vendor has before conveyance and which consists of his retention of title as security for the performance of the contract by the vendee.

*Wingard*, 113 So. 2d at 677-78.

contract of sale has a lien which enables him to enforce payment of the purchase money against the purchaser's equitable estate."); *Loventhal v. Home Insurance Co.*, 20 So. 419, 420 (Ala. 1896) ("The vendee is the equitable owner of the land . . . .); *Mid-State Homes*, 256 So. 2d at 897 ("Whereas the vendee, under the contract of sale, had only the equitable title to the property . . . ."). *Cf. State v. White Furniture Co.*, 90 So. 896, 897 (Ala. 1921) (holding that vendee of personal property under an executory sales contract has equitable ownership of the property). The equitable interest held by the vendee "arm[s the vendee] with the right to go into a court of equity and obtain the absolute, unconditional legal estate in the lands upon simply discharging the incumbrance created thereon by the quasi mortgage for the purchase money." *Loventhal*, 20 So. at 421. In other words, the vendee of real property under an executory contract has "a right to specific performance of his contract." *McAllister v. Altus Bank*, 578 So. 2d 1266, 1269 (Ala. 1991). When the vendor "does not have complete title, the purchaser is entitled to whatever interest the seller has in the property." *Id.*

## B.    The "First In Time, First In Right" Rule of Priority

The priority of a federal tax lien in relation to other property interests is a federal question, determined by application of the common law rule of "the first in time is the first in right." *United States v. City of New Britain, Conn.*, 347 U.S. 81, 85

(1954).  Thus, the question of whether plaintiffs' equitable interest is superior to the federal tax liens is determined by the date on which those interests arose.

As discussed in the previous section, a purchaser of real property under an executory contract obtains an equitable interest in the property upon execution of the executory contract.  In this case, therefore, plaintiffs' equitable interest in the properties attached on May 11, 2007, the date upon which plaintiffs and Bracy executed the land sales contract.

Federal tax liens, on the other hand, "arise at the time the assessment is made . . . ."  26 U.S.C. § 6322.  An assessment is a step in the process of collecting delinquent taxes under the Internal Revenue Code.[40]  "The 'assessment,' essentially a bookkeeping notation, is made when the Secretary or his delegate establishes an account against the taxpayer on the tax rolls."  *Laing v. United States*, 423 U.S. 161, 170 n.13 (1976); *see also* 26 U.S.C. § 6203 ("The assessment shall be made by recording the liability of the taxpayer in the office of the Secretary in accordance with the rules or regulations prescribed by the Secretary.").

---

[40] *See generally* James K. Wiles & Thomas A. Matthews, *A Survey of Federal Tax Collection Procedure:  Rights and Remedies of Taxpayers and the Internal Revenue Service*, 3 Alaska L. Rev. 269, 270-72, 277-82 (1986).  If a tax liability is not paid or settled upon the conclusion of an administrative audit, the IRS may issue a notice of deficiency — a document that is generally referred to as a "90-day letter."  *See* 26 U.S.C. § 6212.  Issuance of the notice of deficiency commences a ninety day period during which the taxpayer may file a petition with the Tax Court for the redetermination of the deficiency.  26 U.S.C. § 6213.  Upon expiration of the ninety day period following the notice of deficiency, the IRS may assess the federal tax liability against the taxpayer.  26 U.S.C. §§ 6201-6207.

An assessment against a taxpayer creates a lien on the property of the taxpayer, as well as on property owned by an "alter-ego" of the taxpayer because, for federal tax purposes, the property owned by a delinquent taxpayer includes property owned by an alter-ego of the taxpayer. *See*, *e.g.*, *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350-51 (1977); *Shades Ridge Holding Co., Inc. v. United States*, 888 F.2d 725, 728 (11th Cir. 1989) ("Property of the nominee or alter ego of a taxpayer is subject to the collection of the taxpayer's tax liability."); *Wolfe v. United* States, 798 F.2d 1241, 1245 (9th Cir. 1986) ("[U]nder alter ego theory, the assessment against the corporation was effective against [its alter ego] as well.") (alterations supplied); *Harris v. United States*, 764 F.2d 1126, 1129 (5th Cir. 1985) (holding that an assessment against an entity subjects the property of the alter-ego of that entity to a federal tax lien); *Valley Finance v. United States*, 629 F.3d 162, 169 (D.C. Cir. 1980) (alter ego of corporation not entitled to separate notice of deficiency).[41]

Here, none of the assessments against Bracy were made prior to the execution

---

[41] That rule derives from the principle that "taxation is not so much concerned with the refinements of title as it is with *actual command over the property taxed* — the actual benefit for which the tax is paid." *Corliss v. Bowers*, 281 U.S. 376, 378 (1930) (emphasis supplied). "[I]t makes no difference that such 'command' may be exercised through specific retention of legal title or the creation of a new equitable but controlled interest, or the maintenance of effective benefit through the interposition of a subservient agency." *Griffiths v. Helvering*, 308 U.S. 355, 357-58 (1939). The *Griffiths* opinion also observed that: "Taxes cannot be escaped 'by anticipatory arrangements and contracts however skillfully devised by which the fruits are attributed to a different tree from that on which they grew.'" *Id.* at 358 (quoting *Lucas v. Earl*, 281 U.S. 111, 115 (1930)) (emphasis supplied).

22

of the land sale contract on May 11, 2007.  However, the IRS made seventy-nine assessments against Bracy's Vending, Inc.; PBS Blues Bar, Inc.; and Green Room Lounge, Inc. prior to May 11, 2007, and because it is undisputed that Bracy was the alter-ego of those entities, those assessments attached federal tax liens to the subject properties.  Thus, the federal tax liens created by the assessments made prior to May 11, 2007, have priority over plaintiffs' equitable interest under the "first in time, first in right rule."  The federal tax liens created by the assessments made after May 11, 2007, do not have priority over plaintiffs' interest.

## C.   The Section 6323(a) Exception to the "First In Time, First in Right Rule"

Title 26, United States Code, Section 6323(a), creates certain exceptions to the "first in time, first in right" rule of priority:  "The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary."  "Congress enacted § 3672[, now 26 U.S.C. § 6323,] in order to "avoid the harsh condition created by the holding in *United States v. Snyder*, 149 U.S. 210 [(1893)], . . . that a secret federal tax lien was good against a purchaser for value without notice."  *United States v. Gilbert Associates, Inc.*, 345 U.S. 361, 363-64 (1953) (alterations supplied).

Plaintiffs argue that they are "purchasers" of the subject properties and, thus,

they receive the protection of the § 6323(a) exception.  The IRS argues that plaintiffs are not "purchasers" for the purposes of § 6323(a).  If plaintiffs meet the requirements for the exception to apply, plaintiffs' interest in the properties has priority over the federal tax liens, because plaintiffs acquired their interest in the properties on May 11, 2007, before the IRS filed the first "Notice of Federal Tax Lien" on July 20, 2007.

A "purchaser" under § 6323(a) is defined as:

> [A] person who, for adequate and full consideration in money or money's worth, acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchasers without actual notice.  In applying the preceding sentence for purposes of subsection (a) of this section . . .
>
> (A)  a lease of property,
>
> (B)  a written executory contract to purchase or lease property,
>
> (C)  an option to purchase or lease property or any interest therein, or
>
> (D)  an option to renew or extend a lease of property,
>
> which is not a lien or security interest shall be treated as an interest in property.

26 U.S.C. § 6323(h)(6) (alteration supplied).  The parties do not dispute that plaintiffs' have "an interest in the subject properties," and that plaintiffs paid "adequate and full consideration for that interest." The only disputed issue is whether plaintiffs' interest "is valid under local law against subsequent purchasers without actual notice."

24

The IRS asserts that, under Alabama law, a *bona fide* purchaser *without notice* of another party's equitable interest in property has a superior claim to the property and cites two cases in support.  In *Hurst & McWhorter v. Bell & Co.*, 72 Ala. 336 (1882), referring to a mortgage on crops not yet in existence, the Alabama Supreme Court stated that the mortgage did not "pass legal title to such property," but it did "create[] an equitable interest . . . that a court of equity will enforce and protect against all persons *other than bona fide purchasers without notice.*"  *Id.* at 340 (emphasis supplied).  In *Stone v. Lacy*, 17 So. 2d 865 (1944), the Alabama Supreme Court reviewed the holding of a trial court that the appellee was a *bona fide* purchaser for value of real property without notice of the alleged equity interest of the appellant. *Id.* at 865.  After finding that the trial court correctly ruled that the appellee did not have notice of the appellant's alleged equitable interest, the Court held that the appellee had a superior interest in the property.  *Id.* at 867.

Those cases do not apply to the present case, however.  Nothing indicates that the holders of the equitable interests in either of the cases had recorded the contract giving rise to their interest.  Here, in contrast, plaintiffs recorded the executory contract in the Probate Records of Madison County, and Alabama law accords a greater priority to plaintiffs' interest due to that fact.  The relevant statutory provision provides, in part, that:

> Except as may be otherwise provided by the Uniform Commercial Code, all deeds, mortgages, deeds of trust, bills of sale, *contracts or other documents purporting to convey any right, title, easement, or interest in any real estate* or personal property and all assignments of mortgages, deeds of trust or other securities for debt or extension agreements with respect thereto, when executed in accordance with law, shall be admitted to record in the office of the probate judge of any county. *Their filing for registration shall constitute notice of their contents.*

Ala. Code § 35-4-51 (1975) (emphasis supplied).  Additionally, Alabama Code § 35-4-63 provides:  "The recording in the proper office of any conveyance of property or other instrument which may be legally admitted to record operates as notice of the contents of such conveyance or instrument without any acknowledgment or probate thereof as required by law."  Once a vendee records the contract for the purchase and sale of land, the vendee's equitable interest acquires priority over the interests of all subsequent purchasers.  *See Saliba v. Brackin*, 69 So. 2d 267, 270 (Ala. 1953) (holding that, if a party records a contract for the sale of land, a subsequent purchaser has notice of that interest and may be divested of his or her interest in the property in a suit against the seller to compel specific performance).

The Alabama recording statutes make it legally impossible, once a contract for the sale of land is recorded, for any subsequent purchaser to be a purchaser *without notice* of that interest.  Thus, once a vendee records a contract for the sale of land, the vendee's interest in the property is superior to the interests of *any* subsequent

26

purchaser.  As the First Circuit observed in *United States v. V & E Engineering & Construction Co., Inc.,* 819 F.2d 331 (1st Cir. 1987), section 6323(a)

> speaks in general terms of an interest "valid under local law against subsequent purchasers without actual notice."   The simplest interpretation of this phrase, as well as the interpretation most consistent with the usage of such phrases in property law, is that the interest must be able to prevail against all hypothetical subsequent purchasers.

*Id.* at 335.   Because plaintiffs would prevail against *all* hypothetical subsequent purchasers once the contract was recorded, plaintiffs' equitable interest is an interest "valid under local law against subsequent purchasers without actual notice."  Thus, plaintiffs are entitled to the protection of 26 U.S.C. § 6323(a) because they were "purchasers" of the subject property, and their equitable interest takes priority over the federal tax liens.

## IV.  CONCLUSION AND ORDER

Upon consideration of the foregoing issues, summary judgment is due to be, and hereby, is entered in favor of plaintiffs on all claims.   Plaintiffs' motion for summary judgment is GRANTED, and the motion for summary judgment filed by the Internal Revenue Service is DENIED.  It is ORDERED, ADJUDGED and DECREED that plaintiffs' interest in the subject properties has priority over the federal and state tax liens.  Costs are taxed as paid.  The Clerk is directed to close this file.

DONE this 22nd day of June, 2012.

_____
United States District Judge

28